NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RUBYE BARKHOUSEN,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | Case Number C 05-04648 JF<br><br>ORDER[1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket nos. 13, 15] |

    Plaintiff Rubye Barkhousen ("Barkhousen") seeks reversal of a decision by Defendant Commissioner of Social Security ("Commissioner") denying her disability insurance benefits. The challenged decision was rendered by Administrative Law Judge Adolfo J. Vila (the "ALJ") on April 22, 2005. The ALJ's decision became final on November 2, 2005, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review of the ALJ's decision. Plaintiff filed a motion for summary judgment on July 25, 2006. Defendant filed a cross-motion for summary judgment on September 5, 2006. Plaintiff filed a reply on September

---

[1] This disposition is not designated for publication and may not be cited.

12, 2006. The matter was submitted without oral argument.

## I. BACKGROUND

The following facts are taken from the ALJ's decision dated April 22, 2005, and the accompanying administrative record. Barkhousen is sixty-four years old with a high school education; she worked in the past as a data entry clerk. Admin. R. at 14. Barkhousen alleges that she became disabled on February 16, 2001, as a result of problems with back pain, poor eye sight, hearing loss and loss of concentration. *Id.* On September 10, 2002, she applied for disability insurance benefits and supplemental security income payments.[2] *Id.* at 13. Her application was initially denied on April 30, 2003, and denied again after reconsideration on September 24, 2003. *Id.* at 22-23. Pursuant to Barkhousen's request, the ALJ held a de novo administrative hearing on January 19, 2005. Cross-mot. Summ. J. at 2. Barkhousen, who was represented by counsel, testified at the hearing, as did vocational expert Susan Brooks ("Brooks"). Admin. R. at 344-372. The hearing occurred in Dallas, Texas, where Barkhousen resided at the time. *Id.* at 13.

The ALJ found that Barkhousen is not disabled within the meaning of the Social Security Act and therefore is not entitled to the benefits for which she applied. *Id.* at 21. After consideration of the entire record, including medical opinions described below, the ALJ found the following. Barkhousen has not engaged in substantial gainful activity since the alleged onset of the disability. *Id.* at 20. Her osteoporosis and affective mood disorder are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). However, these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. *Id.* Barkhousen's allegations regarding her limitations are not totally credible. *Id.* She has the residual functional capacity to lift fifty pounds occasionally and twenty-five pounds frequently, to stand or walk six hours total

---

[2] Barkhousen applied previously for such benefits in 2001, but was denied in a separate ALJ decision that is not at issue in the instant action.

in an eight-hour workday, and to sit six hours total in an eight hour workday. *Id.* From a mental standpoint, Barkhousen is moderately limited in her ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Barkhousen retains the ability to understand, remember and carry out simple instructions; perform activities within a schedule; maintain attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and make simple work-related decisions. *Id.* Finally, Barkhousen's social skills and adaptive functions are adequate. *Id.* Accordingly, Barkhousen retains the residual functional capacity to perform and sustain semi-skilled medium work. *Id.*

The ALJ found further that Barkhousen suffers a disturbance of mood with depressive symptoms and anxiety that do not precisely satisfy the diagnostic criteria of the psychiatric review technique form. *Id.* Her symptoms result in a "moderate" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and "no" episodes of decompensation. *Id.* Consistent with the credible testimony of the vocational expert, Barkhousen's past relevant work as data entry clerk did not require the performance of work-related activities precluded by her residual functional capacity pursuant to 20 C.F.R. §§ 404.1565 and 416.965. *Id.* at 21. Ultimately, Barkhousen's medically determinable osteoporosis and affective mood disorder do not prevent her from performing her past relevant work, therefore she is not under a "disability" as defined in the Social Security Act. *Id.*

On June 2, 2005, Barkhousen requested administrative review of the ALJ's decision by the Appeals Council. *Id.* at 297. Her request was denied and the ALJ's decision thus became final. *Id.* at 5-9. Barkhousen, who presently resides in San Jose, California, commenced this action on November 11, 2005, pursuant to 42 U.S.C. § 405(g). In her motion for summary judgment, Barkhousen requests reconsideration of the ALJ's final decision and an award against

"Social Security Disability" in the amount of $300,000.  Mot. Summ. J.

## II.  LEGAL STANDARD

**A.  Standard for Reviewing the Commissioner's Decision**

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

**B.  Standard for Determining Disability**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  *Id.*  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.  *Id.*  If the claimant

has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[3] to perform his or her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The plaintiff has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[4] the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

### III. DISCUSSION

Barkhousen requests summary judgment against the Commissioner for "lack of case review and communications" and requests an award of $300,000. Mot. Summ. J. In her reply memorandum, Barkhousen asserts that: (1) the Appeals Council failed to review her notes and requests, (2) the ALJ did not access medical reports by Dr. Mansfield and Dr. Kotamari, and did not consider the full diagnosis of Dr. Moe, and (3) there was no evidence before the ALJ of Barkhousen's lifting capacity. Additionally, Barkhousen attached a current doctor's evaluation

---

[3] A claimant's residual functional capacity is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

to her reply. The Commissioner asserts that Barkhousen is not entitled to damages in this case, that the ALJ properly assessed the medical evidence, and that Barkhousen has not satisfied her burden of demonstrating that the record should be supplemented.

**A. Appeals Council Denial of Request for Review**

Barkhousen asserts that "Plaintiff made true notes and requests to which [the] Appeals Counsel [sic] should have reviewed." Reply Mem. at 1. An ALJ decision following a hearing does not become the final decision of the Commissioner until the claimant requests review by the Appeals Council, and the Appeals Council either grants or denies review. *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989) (citing 20 C.F.R. §§ 404.900(a)(5)). A party may obtain review of that final decision by filing a civil action. 42 U.S.C. § 405(g). Barkhousen did request review by the Appeals Council, and her request was denied. This Court thus has jurisdiction to review the ALJ's decision. However, this Court does not have jurisdiction to review the Appeals Council's denial of Barkhousen's request for review.

**B. Consideration of Medical Reports**

Barkhousen asserts that the ALJ did not consider medical reports by Dr. Mansfield and Dr. Kotamari, and did not consider the full diagnosis of Dr. Moe. The Commissioner asserts that the ALJ properly assessed the medical evidence in finding that Barkhousen was not disabled.

*(1) Dr. Mansfield*

The ALJ decision states that Dr. Mansfield examined Barkhousen on February 19, 2003. The decision goes on to address Dr. Mansfield's report as follows.

> The claimant alleged schizophrenia and poor concentration. The claimant reported daily activities that include household tasks, watching television, reading, crafts, and independent self care. The claimant appeared frustrated and demonstrated poor coping skills. Her affect was flat and her mood was depressed. She had fair insight and slowed motor activities, but her speech was coherent, thought content was appropriate, and she was oriented times 3. The claimant exhibited a low average range of intellect, pain behavior, and diminished concentration and memory. Dr. Mansfield opined that the claimant had poor ability to deal with the public and interact with supervisors, and she was seriously limited but not precluded in her ability to follow work rules, relate to co-workers, use judgment, deal with work stress, function independently, and maintain attention and concentration.

Admin. R. at 16.

The ALJ's discussion accurately reflects the contents of Dr. Mansfield's report found in the medical record. *Id.* at 197-200. The record thus shows that the ALJ did not fail to consider Dr. Mansfield's evaluation and opinion.

*(2) Dr. Kotamari*

While the ALJ's decision does not specifically mention Dr. Kotamari's name, the medical record reveals that Dr. Kotamari is affiliated with Parkland Memorial Hospital, and the ALJ decision does address Parkland medical reports. Admin R. at 241-43; *Id.* at 16-17. The medical record includes the following notes and reports by Dr. Kotamari: progress notes taken on February 2, 2004, reports regarding a CT scan and bone density testing done on February 24, 2004, and a report regarding an MRI done on April 20, 2004. *Id.* at 251, 253, 257. The ALJ decision accurately summarizes the contents of these notes and reports. *Id.* at 17. Again, the record shows that the ALJ did not fail to consider Dr. Kotamari's notes and reports.

*(3) Dr. Moe*

The ALJ decision states that the "medical record revealed that the claimant was treated by Carlos Moe, D.O. On October 9, 2002, Dr. Moe opined that the claimant was incapacitated and could not perform substantial gainful employment." Admin. R. at 16. The decision specifically addresses the reported x-rays, scans and treatment that Barkhousen received from Dr. Moe. In concluding that Barkhousen's impairments are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments in the Listing, the ALJ states that he "has given careful consideration to the opinions expressed by the medical source of record." *Id.* at 19. The ALJ then states the following.

> Dr. Moe opined that the claimant was incapacitated and could not perform substantial gainful employment. . . The opinion of a treating physician is entitled to great weight when supported by objective medical evidence and consistent with other substantial evidence of record. On the other hand, a statement that claimant can or cannot perform a past job, or other jobs, are not medical opinions but administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issue[s] reserved to the Commissioner, such as Dr. Moe's, can never be given controlling weight as it is not supported by the objective evidence as a whole.

*Id.*

Under Ninth Circuit authority, physicians in disability cases may render medical and clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so. *Id.* (citing *Matthews v. Shalala,* 10 F.3d 678. 680 (9th Cir.1993)). A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. *Id.* (citing *Lester,* 81 F.3d at 830).

However, the ALJ in this case sits in Texas, within the Fifth Circuit. Accordingly, the ALJ properly could apply the Fifth Circuit's legal standards rather than those of the Ninth Circuit. *See Randolph v. Barnhart*, 386 F.3d 835, 841-842 (8th Cir. 2004) (noting that where the ALJ is based in the Fifth Circuit and the reviewing court is based in the Eighth Circuit, the ALJ is not bound by Eighth Circuit case law).[5] Under Fifth Circuit authority, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citing *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985)). The treating physician's opinions, however, are far from conclusive as "the ALJ has the sole responsibility for determining the claimant's disability status." *Id.* (citing *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir. 1990)). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. *Id.* Recognized good cause exceptions include disregarding statements that are brief and conclusory or otherwise unsupported by the evidence. *Id.* (citing *Scott,* 770 F.2d at 485).

---

[5] In *Randolph*, the court noted nonetheless that the ALJ sitting in the Fifth Circuit had not violated the Eighth Circuit's precedential legal requirements. *Randolph*, 386 F.3rd at 842 n.10. However, the court did not indicate that the outcome would be different if Fifth Circuit authority was in conflict with Eight Circuit authority. *Id.*

The Social Security Administration has set forth regulations regarding medical source opinions on issues that are reserved to the Commissioner. 20 CFR §§ 404.1527(e), 404.927(e). Under these regulations, an opinion that a claimant is "disabled" or "unable to work" are not medical opinions but are instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case. *Id.* In 1996, the Social Security Administration issued a ruling to provide additional policy interpretations and procedures for evaluating opinions on issues reserved to the Commissioner. Soc. Sec. Ruling 96-5p, 1996 WL 374183. The ruling held that opinions on these issues must not be disregarded. *Id.* at 5. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance. *Id.* at 5. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. *Id.* If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. *Id.*

In the instant case, the ALJ applied the correct legal standard in not giving controlling weight to Dr. Moe's ultimate conclusion that Barkhousen is unable to work. The ALJ addressed Dr. Moe's medical findings and evaluated other evidence in the case record to determine the extent to which Dr. Moe's opinion is supported by the record. The record reflects that the ALJ had good cause to disregard Dr. Moe's opinion of disability because it was not supported by the objective evidence as a whole.

**C. Lifting Capacity Determination**

The ALJ decision states that, "[b]ased on the evidence, in its entirety, the claimant has the residual functional capacity to lift 50 pounds occassionally [and] 25 pounds frequently[.]" Admin. R. at 18. Barkhousen asserts that there was no evidence before the ALJ with respect to her lifting capacity. However, the medical record contains an evaluation by medical consultant Dr. Cremona. *Id.* at 138-39. This evaluation contains a checklist by which Dr. Cremona

indicates that Barkhousen's exertional limitations allow her to occasionally lift fifty pounds and to frequently lift twenty-five pounds. The checklist instructs the evaluator to base his conclusions on all evidence contained in the file including clinical and laboratory findings, symptoms, observations, lay evidence, and reports of daily activities. On the checklist, the evaluator is asked to explain how and why the evidence supports his conclusions regarding the patient's lifting capacity. In response to this question, Dr. Cremona notes, "61 year old . . . Osteoporosis . . . From all joints. X-ray [] spine normal. Nuero intent . . . RFC takes into consideration pain alleged by cl[aimant]." *Id.* at 139.

Barkhousen asserts that neurology examiner Dr. Elliot did not report on her ability to lift. Dr. Elliot's report in the medical record does not indicate exact pound lifting capacity information. However, the report does indicate that "[o]verall muscle bulk and tone are normal" and that "[o]verall power testing reveals normal 5/5 strength both distally and proximally in the upper and lower extremities." *Id.* at 168. Although Dr. Elliot's report does not list specific weight capacity, it is not inconsistent with Dr. Cremona's assessment of Barkhousen's lifting capacity.

**D. New Evidence**

Barkhousen attached a current doctor's evaluation to her reply memorandum. The Court may remand the case to the Commissioner and order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C.A. § 405(g). For new evidence to warrant remand, the evidence offered must bear directly and substantially on the matter in dispute. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).

The report submitted by Barkhousen reflects a recent evaluation of her lumbar spine and concludes "[n]o acute fracture or sublaxation. Degenerative changes as above." This medical report does not appear to be material to Barkhousen's condition as of the time the ALJ rendered his decision.

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1) Plaintiff's motion for summary judgment is DENIED;

(2) Defendant's cross-motion for summary judgment is GRANTED; and

(3) The Clerk of the Court shall close the file.

DATED: December 5, 2006.

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Sara Winslow          sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

Rubye Barkhousen
3705 Seine Court
San Jose, CA 95127